❏ Original     ❏ Duplicate



CLERK'S OFFICE
A TRUE COPY
Nov 13, 2024
s/ Mariah Kauder
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) |
| | )    Case No.   24-M-526 (SCD) |
| Devices A & B, currently in law enforcement custody, as further described in Attachment A | ) |
| | ) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:    Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ Eastern _____ District of _____ Wisconsin _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before    11-27-24    _____ *(not to exceed 14 days)*

❏ in the daytime 6:00 a.m. to 10:00 p.m.    ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ Hon. Stephen C. Dries _____ .
*(United States Magistrate Judge)*

❏ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

❏ for _____ days *(not to exceed 30)*    ❏ until, the facts justifying, the later specific date of _____ .

Date and time issued:    11-13-24. 9:25 am      *Judge's signature*

City and state:    Milwaukee, WI      Honorable Stephen C. Dries, U.S. Magistrate Judge
*Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

**ATTACHMENT A**

**PROPERTY TO BE SEARCHED**

The property to be searched is an Apple iPhone, blue in color, hereinafter "**Device A**", and an Apple iPhone, black in color, hereinafter "**Device B**".

**Device A and Device B are** currently located at 11548 W. Theo Trecker Way, Milwaukee, Wisconsin.

This warrant authorizes the forensic examination of **Device A and Device B** for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1.      All records on the Devices described in Attachment A that relate to violations of

21 U.S.C. §§ 841(a)(1), 843(b), and 846; and involve Dominique Jamall HOLMES, including, but

not limited to:

  a.  lists of customers and related identifying information;

  b.  types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

  c.  any information related to co-conspirators and sources of drugs and firearms (including names, addresses, phone numbers, or any other identifying information);

  d.  any information recording schedule or travel;

  e.  all bank records, checks, credit card bills, account information, and other financial records;

  f.  photographs and/or video depicting possession of drugs, firearms, assets, or other activities related to drug trafficking or money laundering;

  g.  any evidence related to either the ownership, purchase, or possession of drugs, firearms, and assets;

  h.  records of Internet activity, including browser history, search terms that the user entered into any Internet search engine, and records of user-typed web addresses; and

  i.  all data, communications, information, and records, in whatever form, that have any tendency to establish the actual or intended physical location of its user, or that of any of their associates involved in criminal activity, as well as the physical location of the Devices;

2.      Evidence of user attribution showing who used or owned the Devices at

the time the things described in this warrant were created, edited, or deleted, such as

logs, phonebooks, saved usernames and passwords, documents, and browsing history;

1

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.



CLERK'S OFFICE
A TRUE COPY
Nov 13, 2024
/s/ Mariah Kauder
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

### for the

### Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>**Devices A & B, currently in law enforcement<br>custody, as further described in Attachment A** | )<br>)<br>)<br>)<br>)<br>)     Case No. 24-M-526 (SCD) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
See Attachment A.

located in the _____ Eastern _____ District of _____ Wisconsin _____ , there is now concealed *(identify the person or describe the property to be seized):*
See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1), (b)(1), and 846 | Possession with intent to distribute controlled substances, and Conspiracy to possess with the intent to distribute controlled substances. |

The application is based on these facts:
See Attached Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Dorian Whittenberger, Milwaukee Police Officer
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephone _____ *(specify reliable electronic means).*

Date: 11-13-24

*Judge's signature*

City and state: Milwaukee, WI

Honorable Stephen C. Dries, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF AN APPLICATION
## UNDER RULE 41 FOR A SEARCH WARRANT

I, Dorian Whittenberger, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am a state certified law enforcement officer for the Milwaukee Police Department and assigned to the Narcotics Division – North Central High Intensity Drug Trafficking Area (HIDTA), Drug and Gang Task Force, Group 68. Prior to the affiant working at HIDTA, the affiant was assigned to the Criminal Investigations Bureau – Special Investigations Division (SID) where the affiant would investigate illegal drug distribution, illegal possession of firearm(s), managing confidential informants, controlled buys, and investigative follow up for violent felony crimes, which would include locating and arresting wanted subject(s) for the crimes and assisting with executing subsequent search warrant(s). Prior to the affiant working at SID, the affiant District Three – Violent Crime Reduction Team (Drug Car), where the affiant would investigate illegal streel-level distribution, illegal possession of firearm(s), managing confidential informants, controlled buys, knowledge of targets and locations creating

crime in District Three and receiving tip(s) regarding illegal activity in the City of Milwaukee. Prior to working as the drug car at District Three, the affiant was assigned to the District Three – Community Prosecution Unit (CPU). While assigned to CPU, the affiant would focus on drug houses, nuisance properties, nuisance person(s), businesses, and high violent crime areas in the district, assisting in search warrants, sharing information, uniform presence for traffic stops and field interviews during investigations. During these assignments, the affiant has received training in the investigation of drug trafficking; the affiant has participated in several hundred drug-related offenses, resulting in the prosecution and conviction of numerous individuals and the seizure of illegal drugs, weapons, stolen property, thousands of dollars in United States currency and other evidence of criminal activity. As a narcotics investigator, the affiant has interviewed many individuals involved in drug trafficking and has obtained information from them regarding acquisition, sale, importation, manufacture, and distribution of controlled substances. Through the affiant's training and experience, the affiant is familiar with the actions, habits, traits, methods, and terminology utilized by the traffickers and abusers of controlled substances. The affiant has participated in all aspects of drug investigations, including physical surveillance, execution of search warrants, undercover transactions, and court-ordered wiretaps, analysis of phone and financial records, and arrests of numerous drug traffickers. The affiant has been the affiant on many search warrants. The affiant has also spoken on numerous occasions with other experienced narcotics investigators concerning the methods and practices of drug traffickers and money launderers.

3.     I have participated in numerous complex narcotics investigations which involved violations of state and federal controlled substances laws and money laundering laws including Title 21, United States Code, Sections 841(a)(1), 843(b) and 846, and Title 18, United States Code, Sections 1956 and 1957, and other related offenses. I have had both formal training and have participated in numerous complex drug trafficking investigations.

4.     As a Police Officer and a Task Force Officer, I have participated in the investigation of numerous narcotics-related offenses, resulting in the prosecution and conviction of individuals and the seizure of illegal drugs, weapons, United States currency and other evidence of criminal activity. As a narcotics investigator, I have interviewed many individuals involved in drug trafficking and have obtained information from them regarding the acquisition, sale, importation, manufacture, and distribution of controlled substances. Through my training and experience, I am familiar with the actions, habits, traits, methods, and terminology used by the traffickers and abusers of controlled substances. I have participated in all aspects of drug investigations, including physical surveillance, execution of search warrants, undercover operations, analysis of phones and the arrests of numerous drug traffickers. I have also been the affiant of many search warrants.

5.     Additionally, I have spoken with other experienced narcotics investigators on numerous occasions concerning the method and practices of drug traffickers and money launderers. Furthermore, I have attended training courses that specialized in the investigation of narcotics trafficking and money laundering. Based on my training,

experience, and conversations with other law enforcement officers (LEOs), I am familiar with the ways in which drug traffickers conduct their unlawful drug trafficking activity, including, but not limited to, their methods used to manufacture, distribute, transport, store, and import controlled substances, their methods used to collect and launder trafficking-derived proceeds, their use of code words and numbers to conduct their transactions, their methods for concealing and safeguarding narcotics and narcotics proceeds, and their use of violence and threats of violence to protect their organization. I know and have observed that drug traffickers frequently possess firearms and ammunition to protect their illegal product.

6.      I am further aware of the methods employed by major narcotics organizations to thwart any investigation of their illegal activities. I am also familiar with their use of telephones, counter-surveillance, false and/or fictitious identities, and the use of coded language during conversations when referring to narcotics in an attempt to disguise the true meaning of the conversation. Finally, I know that it is common for drug traffickers to maintain evidence of their trafficking, i.e. records, receipts, notes, ledgers, airline tickets, receipts relating to the purchase of financial instruments and/or the transfer of funds and other papers relating to the transportation, ordering, sale and distribution of controlled substances, and that they are maintained where the traffickers have ready access to them, such as in their cellular telephones.

7.      Based upon my training and experience, I know that computer hardware and software may be important to a criminal investigation in two distinct and important respects: (1) the objects themselves may be instrumentalities, fruits, or evidence of crime,

and/or (2) the objects may have been used to collect and store information about crimes (in the form of electronic data). Rule 41 of the Federal Rules of Criminal Procedure permits the government to search and seize computer hardware and software which are (1) instrumentalities, fruits, or evidence of crime, or (2) storage devices for information about crime.

8.     To this end, based upon my training and experience, I know that individuals involved in drug trafficking frequently use cellular telephones to maintain contact and arrange transactions with their sources and customers of and co-conspirators in the distribution of controlled substances. I have also found it very common for crime suspects to use their cellular telephones to communicate aurally or via electronic message in "text" format with individuals whom they purchase, trade, or otherwise negotiate to obtain illegal drugs. I also believe that it is common for crime suspects who possess illegal controlled substances and firearms to often take or cause to be taken photographs and other visual depictions of themselves, their associates, and the illegal controlled substances and firearms that they control, possess, buy, and sell.

9.     Throughout this affidavit, reference will be made to case agents. Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your Affiant has had regular contact regarding this investigation.

10.     This affidavit is based upon my personal knowledge, and upon information reported to me by other federal, state, and local law enforcement officers during the course of their official duties, all of whom I believe to be truthful and reliable.

11.     This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

12.     The property to be searched includes a blue Apple iPhone, hereinafter "**Device A**" and a black Apple iPhone, hereinafter "**Device B**".

13.     **Device A and Device B** are currently located at 11548 W. Theo Trecker Way, in the City and County of Milwaukee.

14.     The applied-for warrant would authorize the forensic examination of **Device A and Device B** for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

15.     The United States, including the North Central High Intensity Drug Trafficking Area, and the DEA are conducting a criminal investigation of Dominique J. Holmes regarding possible violations of 21 U.S.C. §§ 841(a)(1), (b)(1), and 846 (attempted possession of five kilograms or more of cocaine.

16.     On October 20, 2024, a Texas Department of Public Safety (DPS) Trooper was on routine patrol on Interstate 40 in Panhandle, Carson County, Texas. At approximately 2:38 p.m., the Trooper observed a maroon in color truck tractor towing a car hauler semi-trailer (TTST) with Illinois registration P1147502. The Trooper observed the TTST with an obstructed registration plate traveling eastbound on Interstate 40 at mile marker 96. The Trooper conducted a traffic stop on the TTST for the said violation.

Operating a vehicle with an obstructed license plate is a violation of the Texas Transportation Code.

17.     The driver of the TTST, hereinafter referred to as P.G., presented the Trooper with a commercial driver's license (CDL) out of Illinois. P.G. advised the Trooper that he/she is employed by Vehicle Transport Inc. out of Palatine, Illinois.

18.     The Trooper has extensive training in criminal and drug trafficking interdiction including drug trafficking associated with commercial motor vehicles. One of the vehicles that was being transported by P.G. is identified as a silver 2005 Jeep Cherokee Limted, VIN: J8HR58225C595461 (hereinafter "Subject Vehicle"). The Trooper observed that the Subject Vehicle had an aftermarket compartment underneath the vehicle where the spare tire should have been located at. The Trooper identified this aftermarket compartment as a "trap." Due to the hidden compartment and the drug trafficking destination, the Trooper had reasonable suspicion to question P.G. about the circumstances regarding the Subject Vehicle.

19.     With the Trooper's reasonable suspicion and training and experience, the Trooper requested to search the Jeep. P.G. gave the Trooper consent to search the Subject Vehicle. P.G. who had the keys for the Subject Vehicle and authorization to drive the Subject Vehicle on and off the TTST, removed the Subject Vehicle from the TTST, and the Trooper conducted a vehicle search. During the search the Trooper located an aftermarket built-in compartment under the rear cargo area floorboard of the Subject Vehicle. This compartment was accessed and inside were located ten (10) plastic sealed brick shaped bundles. The suspected contraband was later fielded tested and tested positive for

cocaine with the weight of approximately 27.5 pounds or 12.5 kilograms of cocaine.

20.     Upon the bundles being located, the Trooper contacted the DPS Criminal Investigations Division (CID). DPS CID Agents and Agents from the Drug Enforcement Administration (DEA) Amarillo Resident Office responded to the traffic stop to assist in the investigation. The responding Agents interviewed P.G. who agreed to cooperate with law-enforcement. Agents questioned P.G. about the way that Vehicle Transport Inc. received commercial auto transportation loads. P.G. stated that Vehicle Transport Inc. utilized the company "Central Dispatch." This company is an auto transportation marketplace that allows shippers and carriers to self-manage their own vehicle transportation. Furthermore, this company allows shippers to contact carriers with a completely digital process. Vehicle Transport Inc. receives these transport requests digitally and P.G. is then contacted by Vehicle Transport Inc. dispatch on where to travel and what is to be transported.

21.     P.G. provided agents with the bill of lading issued for the Subject Vehicle. This is a legal document that is provided by a transportation company to a shipper, or a purchaser of goods or specific products being carried. This document typically shows type, quantity, origin, and destination of the described product. P.G. advised he picked up the Subject Vehicle on October 18, 2024, from 1906 West Burbank Blvd, Burbank, California 91506.  The Subject Vehicle had an origin destination of 6036 Tower Ave, Milwaukee, Wisconsin 53223. This location was identified as a residence in the Milwaukee area. Also listed in the document is the person receiving the shipment to be Antonio JONES with phone number 414-870-6517. P.G. also mentioned he would be

delivering the Subject Vehicle to a terminal located at 3601 W Algonquin Rd., Suite 80, Rolling Meadows, Illinois 60008. The Subject Vehicle will then be picked up by another TTST and transported to the drop off location located at 6036 Tower Ave., Milwaukee, Wisconsin 53223.

22.     After speaking with P.G., Agents determined that P.G. did not have any knowledge or was involvement in the distribution of narcotics. DEA Amarillo Agents took custody of the contraband which was transported to the Amarillo Resident Office. Agents from DEA Amarillo contacted Agents/Officers out of the Chicago Field Division Office and the Milwaukee Resident Office. DEA Chicago and Milwaukee agreed to assist in the investigation by allowing P.G. to re-load the Subject Vehicle onto the TTST and have the transport continue for delivery as planned. DEA Chicago and Milwaukee would assist in controlling the delivery of the Subject Vehicle to develop possible suspects in a drug trafficking organization. The Subject Vehicle was re-loaded for transport onto the TTST and P.G. was released from the traffic stop.

23.     On October 22, 2024, Agents from DEA Chicago were notified that the Subject Vehicle had arrived at the terminal located at 3601 W Algonquin Rd., Suite 80, Rolling Meadows, Illinois 60008. A Task Force Officer (TFO) from DEA Chicago Group 31 spoke to the owner of Vehicle Transport Inc. via telephone regarding the Subject Vehicle and agreed to meet on October 23, 2024, to arrange the final delivery of the Subject Vehicle.

24.     The affiant knows that at on October 25th, 2024, the Honorable Nancy Joseph, U.S. Magistrate Judge of the Eastern District of Wisconsin, signed the tracking

9

warrant for law enforcement to enable install a tracking device and trigger, a device which will alert law enforcement when the non-factory compartment of the Subject Vehicle is opened in the Eastern District of Wisconsin.    On October 25, 2024, the affiant knows that surveillance officers observed the truck with Subject Vehicle arrive to the 6036 W. Tower Ave, Brown Deer, WI at approximately 11:15AM. The truck off loaded the vehicle in the 6100-block of W Tower Ave, and the subject, Dominque Jamall HOLMES, walked to meet with the driver of the truck.  Surveillance officers observed HOLMES speak with the driver of the truck and sign paperwork, then at approximately 11:27AM, HOLMES entered the driver side of the Subject Vehicle and drove it to the residence of 6036 W Tower Ave and pull it into the garage. At approximately 3:42PM, the garage was opened, and HOLMES was seen by surveillance officers going in and out of the garage. At approximately 3:45PM, the notifications were made that the sensors and mechanisms were activated, and the compartment was entered; at this time take down teams were initiated. At approximately 3:46PM, teams entered the open door, yelling command and identifying themselves, of the attached garage and observed HOLMES leaning into front driver door of the vehicle. HOLMES started to stand up and attempted to close the garage door on law enforcement. HOLMES was subsequently taken into custody with no incident. During a cursory look of the Subject Vehicle, the compartment was enabled and open to view.

25.    Based on the aforementioned information, I believe that subject Dominique Jamall HOLMES was Attempting to Possess Five Kilograms or more of Cocaine and Conspiracy to Possesses Five Kilograms or more of Cocaine in violation of Title 21, United

States Code, Sections 841(a)(1), (b)(1)(A) and 846.

**Search Warrant Executed at the SUBJECT PREMISES and SUBJECT VEHICLE**

26.     On or about October 25th, 2024, the Honorable Laura Crivello authorized a State of Wisconsin search warrant for the SUBJECT PREMISES and SUBJECT VEHICLE.

27.     On October 25th, 2024, law enforcement officers executed the search warrant at the SUBJECT PREMISES and SUBJECT VEHICLE.

28.     Upon searching, **Device A** was located on the living room couch in the SUBJECT PREMISES, which was recovered by FBI SA Jason Soule. **Device B** was located on the driver side floorboard of the SUBJECT VEHICLE, which was recovered by Inv Matthew Kramer.

29.     **Device A and Device B** is currently in the lawful possession of the Milwaukee Police Department (MPD). **Device A and Device B** came into MPD's possession after it was seized in the search warrant execution.

30.     **Device A and Device B** is currently in storage at 11548 W. Theo Trecker Way, West Allis, Wisconsin.  In my training and experience, I know that **Device A and Device B** has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when **Device A and Device B** first came into the possession of MPD.

31.     Based on their training, experience, and knowledge of this investigation, case agents believe that contained within the **Device** is evidence of drug trafficking and the disposition of large sums of U.S. currency.

## **TECHNICAL TERMS**

32.     Based on my training and experience, I use the following technical terms
to convey the following meanings:

a.  Wireless telephone:  A wireless telephone (or mobile telephone, or cellular
    telephone) is a handheld wireless device used for voice and data
    communication through radio signals.  These telephones send signals
    through networks of transmitter/receivers, enabling communication with
    other wireless telephones or traditional "land line" telephones.  A wireless
    telephone usually contains a "call log," which records the telephone
    number, date, and time of calls made to and from the phone.  In addition to
    enabling voice communications, wireless telephones offer a broad range of
    capabilities.  These capabilities include: storing names and phone numbers
    in electronic "address books;" sending, receiving, and storing text messages
    and e-mail; taking, sending, receiving, and storing still photographs and
    moving video; storing and playing back audio files; storing dates,
    appointments, and other information on personal calendars; and accessing
    and downloading information from the Internet.  Wireless telephones may
    also include global positioning system ("GPS") technology for determining
    the location of the device.

b.  Digital camera:  A digital camera is a camera that records pictures as digital
    picture files, rather than by using photographic film.  Digital cameras use a
    variety of fixed and removable storage media to store their recorded

images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites

orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f.  IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

g.  Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

33.  Based on my training, experience, and research, I know that **Device A and Device B** have capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

34.     Based on my knowledge, training, and experience, I know that electronic devices—like **Device A and Device B -** can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on such devices.  This information can sometimes be recovered with forensics tools.

35.     *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the **Devices** was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on **Device A and Device B**  because:

   a.  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b.  Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c.  A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to

draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

36. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of **Device A and Device B** consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

37. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not

involve the physical intrusion onto a premises. Consequently, I submit there is reasonable

cause for the Court to authorize execution of the warrant at any time in the day or night.

## <u>CONCLUSION</u>

38.     I submit that this affidavit supports probable cause for a search warrant

authorizing the examination of **Device A and Device B**  described in Attachment A to

seek the items described in Attachment B.

# ATTACHMENT A

## PROPERTY TO BE SEARCHED

The property to be searched is an Apple iPhone, blue in color, hereinafter "**Device A**", and an Apple iPhone, black in color, hereinafter "**Device B**".

**Device A and Device B are** currently located at 11548 W. Theo Trecker Way, Milwaukee, Wisconsin.

This warrant authorizes the forensic examination of **Device A and Device B** for the purpose of identifying the electronically stored information described in Attachment B.

**ATTACHMENT B**

1.    All records on the Devices described in Attachment A that relate to violations of 21 U.S.C. §§ 841(a)(1), 843(b), and 846; and involve Dominique Jamall HOLMES, including, but not limited to:

    a.   lists of customers and related identifying information;

    b.   types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

    c.   any information related to co-conspirators and sources of drugs and firearms (including names, addresses, phone numbers, or any other identifying information);

    d.   any information recording schedule or travel;

    e.   all bank records, checks, credit card bills, account information, and other financial records;

    f.   photographs and/or video depicting possession of drugs, firearms, assets, or other activities related to drug trafficking or money laundering;

    g.   any evidence related to either the ownership, purchase, or possession of drugs, firearms, and assets;

    h.   records of Internet activity, including browser history, search terms that the user entered into any Internet search engine, and records of user-typed web addresses; and

    i.   all data, communications, information, and records, in whatever form, that have any tendency to establish the actual or intended physical location of its user, or that of any of their associates involved in criminal activity, as well as the physical location of the Devices;

1

2.	Evidence of user attribution showing who used or owned the Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.